IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Northern Division

MARLENE DEHNER, on behalf of herself
and all others similarly situated,

     Plaintiff,

  v.

NATIONSTAR MORTGAGE LLC,

    Defendant.
_____/

Case No.: 1:21-cv-11460

Hon:

CLASS ACTION
COMPLAINT
JURY DEMAND

Scott C. Harris
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
900 W Morgan St
Raleigh, NC. 27603
(919) 600-5000

Edward H. Maginnis
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
(919) 526-0450
emaginnis@maginnishoward.com


*Counsel for Plaintiff and the Proposed Classes*
_____/

## CLASS ACTION COMPLAINT

Marlene Dehner ("Plaintiff") brings this Class Action Complaint against Nationstar Mortgage LLC ("Nationstar" or "Defendant") individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF ACTION

1.      This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from Nationstar's unauthorized withdrawal of enormous sums of money from bank accounts.

2.      Specifically, Nationstar participated in unauthorized debits of mortgage payments from bank accounts; withdrawing multiple monthly payments at a single time without authorization from account holders.

3.      This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers from whom Nationstar unlawfully collected funds through improper ACH debit transactions, in violation of Michigan and Federal law as further set forth herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of the claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1962 *et seq.* ("FDCPA") and Electronic Funds

Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

5.      This Court has jurisdiction of the FDCPA, EFTA and state law claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715, in that (i) the putative class contains more than 100 members; (ii) the class claims total more than $5 million; and (iii) there is minimal diversity because Nationstar is a citizen of a different state than Plaintiff or at least one member of the Class, some of whom have moved in the past six years, and now reside outside of Michigan in a state in which Nationstar is not domiciled.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the state law claims (Conversion, Statutory Conversion, Michigan Regulation of Collection Practices Act, and Negligence) are so related to the federal claims over which the Court has original jurisdiction that they form part of the same case or controversy. The federal and state claims in this action share a common nucleus of operative facts, as set forth herein.

7.      This Court has personal jurisdiction over Defendant because it transacts business across the United Sates, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of Michigan.

8.      In accordance with 28 U.S.C. § 1391, venue is proper in this District because this District is where a substantial part of the conduct giving rise to the Plaintiff's claims occurred, where Defendant transacts business, and where Plaintiff resides.

## **PARTIES**

9.      Plaintiff is and, at all relevant times hereto, has been a citizen and resident of Michigan.

10.     Plaintiff is and, at all relevant times hereto, has been the owner of a residential home located in Alma, Michigan.

11.     Plaintiff's home is, and at all relevant times hereto, subject to a mortgage loan that was serviced by Defendant.

12.     Upon information and belief, Plaintiff's mortgage was in a state of default at the time that Defendant began servicing her mortgage.

13.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

14.     Plaintiff is a "consumer" and "debtor" as those terms are defined by MCL § 445.251(1)(d).

15.     Nationstar Mortgage LLC is a Delaware Limited Liability Company with a principal place of business in Coppell, Texas

16.     Nationstar services mortgage loans throughout the country, including in this District.

17.     Pursuant to 15 U.S.C. § 1692a(6), Nationstar is a "debt collector" with respect to Plaintiff and others similarly situated because Nationstar obtained rights and responsibilities with respect to their mortgage loans while the respective loans were in a state of default.

18.     Nationstar's employees, affiliates, directors agents, vendors, and attorneys (including ACI Worldwide) act under the direction and supervision of Nationstar and, therefore, Nationstar is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, vendors and attorneys under, *inter alia*, the theory of *respondeat superior.*

## FACTUAL ALLEGATIONS

19.     Nationstar is a servicer of mortgages for residential home loans. As a mortgage servicer, Nationstar contracts with investors and/or loan owners to collect payments, fees, and other amounts owed by the homeowner and to provide other "services" to investors.

20.     Nationstar also occasionally refinances mortgages and becomes the homeowner's mortgage lender, while also still performing the same servicing duties.

21.     Upon information and belief, Nationstar services not less than hundreds of thousands of loans throughout the United States.

22.     When Nationstar acquires the servicing rights to a particular loan portfolio, a large percentage of the loans contained therein are delinquent as of the effective date of the acquisition.

23.     Upon information and belief, Nationstar allows borrowers to authorize Nationstar to initiate automatic recurring debit entries once per month equal to the required monthly periodic payment for the respective loan. This allows the debt collection process to run smoothly, efficiently, and (theoretically) safely.

24.     This process is generally initiated through an Automatic Clearing House ("ACH") debit transaction from the borrower's financial institution.

25.     Entities such as Nationstar who initiate these monthly debit transactions are commonly referred to as "Originators."

26.     Originators initiate an ACH transfer through their Originating Depository Financial Institution ("ODFI"), or a third-party agent.

27.     Originators and ODFIs occasionally contract with third parties to act as their agents associated with these transfers.

28.     Borrowers and their joint account holders are commonly referred to as "Receivers" in that their Receiving Depository Financial Institution ("RDFI") receives the ACH transfer request from the ODFI.

29.     Upon information and belief, Nationstar, or its agents, typically will submit a batch file (or files) through the ACH Network to initiate debits from the accounts of borrowers and their joint account holders.

30.     Receivers should only appear on one batch file per month, on a pre-ordained schedule authorized by the receiver.

31.     However, in 2021, Nationstar submitted hundreds of thousands of improper ACH debit requests.

32.     Upon information and belief, some receivers had as many as six ACH debit requests to their bank.

33.     Upon information and belief, some receivers had as much as $50,000.00 taken by Nationstar through unauthorized ACH debits.

34.     In Plaintiff's case, $3,513.03 in unauthorized funds were taken from her RDFI, equivalent to approximately three monthly periodic payments.

35.     Plaintiff, of course, did not authorize this.

36.     Plaintiff was left without purchasing power while Nationstar's payment processing failures were investigated.

37.     Plaintiff was deprived of interest on her savings as a result of Nationstar's unauthorized ACH debits from her bank account.

38.     Plaintiff incurred a $29.00 overdraft penalty as a result of Nationstar's unauthorized ACH debits from her bank account.

39.     Upon information and belief, tens of thousands of similarly situated borrowers also experienced unauthorized ACH debits on their accounts; resulting in, inter alia, lost interest, loss of purchasing power, and overdraft fees.

40.     Nationstar (or its agents) failed to have measures in place to ensure that pre-authorized monthly transactions only occurred monthly.

41.     Nationstar (or its agents) failed to have measures in place to identify significant abnormalities in its ACH debit transactions prior to 'settlement' of the transaction: i.e., the money leaves the borrower's bank account and goes to Nationstar (or its agent).

42.     Nationstar (or its agents) failed to have measures in place to identify an out-of-control run on ACH debit transactions prior to settlement of these transactions.

43.     Upon information and belief, Nationstar (or its agents) failed to comply with the NACHA Operating Rules, which govern ACH transactions and are designed to provide security to the participants.

44.     Nor, upon information and belief, did Nationstar (or its agents) comply with Federal regulations and guidelines governing ACH transactions.

45.     Instead, **Nationstar repeatedly collected amounts from receivers to which it was not legally entitled or authorized to collect**.

46.     As a result of the foregoing, Plaintiff and Class Members have experienced anxiety, frustration, stress, anger, and mental anguish which is fairly traceable to the unauthorized withdrawal of monies from their bank accounts.

47.     Upon information and belief, Nationstar, inter alia, violated consumers' substantive rights to be free from unlawful debt collection, violated consumers' rights to be able to make informed decisions regarding their personal finances, caused consumers to be charged overdraft fees, caused consumers' to be deprived of the use

and accrual of interest with respect to their wrongfully converted funds, and caused consumers to have limited purchasing power while accounts were overdrawn.

48.   As an example of limited purchasing power, Plaintiff had other bills (e.g., Plaintiff's phone bill was due) and living expenses pending at the time of the unauthorized ACH debits.

## CLASS ACTION ALLEGATIONS

49.   The foregoing allegations are hereby incorporated by reference as if fully restated herein.

50.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of the following classes, which are tentatively defined as:

> **Michigan Class**: All consumers throughout the State of Michigan who had funds in excess of a single monthly payment withdrawn from their account during the period from June 21, 2015 through the filing of this Complaint.

> **FDCPA Subclass**: All consumers throughout the State of Michigan whose mortgage loans were serviced by Nationstar, and whose mortgage servicing was transferred to Nationstar while in a state of default, who had funds in excess of a single monthly payment withdrawn from their account during the period of June 21, 2020 through the filing of this Complaint.

**EFTA Subclass**: All consumers throughout the State of Michigan whose bank accounts were subject to unauthorized ACH debits from Nationstar (or its agents) during the period of June 21, 2020 through the filing of this Complaint.

51.    Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Nationstar and any entity in which Nationstar has a controlling interest in Nationstar and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

52.    Numerosity: Plaintiff is unable to provide a specific number of members in each of the classes because that information is solely in the possession of Nationstar. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Nationstar's business records. Upon information and belief, each class contains at least hundreds of consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable

53.    *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because Nationstar's improper automatic withdrawals seemingly occurred through a single action or single series of actions allowing thousands of consumers to have funds withdrawn at substantially the same time. Common questions include, but are not limited to:

a. Whether Nationstar's acts violate the FDCPA, EFTA, MCPA, Michigan Civil Theft Statute and/or constitute the torts of conversion and negligence;

b. Whether Nationstar had adequate measures in place to protect consumers from unlawful theft of funds from their bank accounts through inappropriate ACH debit transactions;

c. Whether Nationstar complied with relevant industry standards, regulations, and guidelines; and

d. The facts and set of circumstances surrounding the cause of these unauthorized ACH debits.

54.    *Typicality*: The claims of Plaintiff are typical of the claims of the proposed class, and all are based on the same facts and legal theories, as all such claims arise out of Nationstar's conduct (i.e. unauthorized ACH debits).

55.    Adequate Representation: Plaintiff is an adequate representative of the putative class in that he does not have antagonistic or conflicting claims with other members of the putative class. Plaintiff has also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions.

56.    Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

57.    *Predominance and Superiority*: The classes are appropriate for certification because questions of law and fact common to the members of the classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the classes is impracticable. Should individual class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e, *et seq.*
(On behalf of the EFTA Subclass)**

58.    The foregoing allegations are hereby incorporated by reference as if fully restated herein.

59.    The electronic funds transfer authorizations in place with respect to the personal bank accounts of Plaintiff and Class Members were limited to one regular monthly mortgage payment per month.

60.     15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

61.     "Preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

62.     15 U.S.C. § 1693e(b) provides that, "in the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer."

63.     Regulation E, 12 C.F.R. § 1005.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

64.     Section 1005.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." Id. at ¶10(b), comment 5.

65.     The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." Id. at ¶10(b), comment 6.

66.     Defendant debited Plaintiff's bank account, and those of all other members of the EFTA Subclass, without obtaining written authorization signed or similarly authenticated from Plaintiff or the EFTA Subclass members for preauthorized electronic fund transfers from their respective accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Regulation E, 12 C.F.R. § 1005.l0(b).

67.     On at least one occasion, Defendant has debited Plaintiff's and EFTA Subclass Members' bank accounts without authorization.

68.     Defendant initiated electronic funds transfers that were not consistent with the electronic funds authorization in place with respect to the personal bank accounts of Plaintiff and Class Members.

69.     Defendant initiated electronic funds transfers without providing reasonable advance notice to Plaintiff or the EFTA Subclass Members of the amount to be transferred and the scheduled date of the transfer.

70.     Section 903(12) of the EFTA, 15 U.S.C. § 1693a(12), provides that "unauthorized electronic fund transfers" include electronic fund transfers from a consumer's account that are initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit.

71.     Regulation E, 12 C.F.R. § 1005.10(b) provides that "preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.

72.     The foregoing unauthorized ACH debits violated, *inter alia*, 15 U.S.C. §
1693e(a)-(b) and Regulation E, 12 C.F.R. § 1005.l0(b) because the unauthorized ACH
debits were conducted in irregular intervals, were not authorized by a writing signed or
similarly authenticated by the respective consumers, Defendant did not provide copies
of the purported authorizations to the respective consumers, and the consumers did
not receive any benefit from the unauthorized ACH debits.

73.     As a result of these unauthorized transfers, Plaintiff and Class Members
suffered damages including but not limited to the loss of use of their personal funds,
loss of interest on their personal funds, emotional distress from their accounts being
drafted without permission and having to demand Defendant fully remedy the
consequences of its wrongful actions.

74.     Plaintiffs, on behalf of herself and the EFTA Subclass, seek the following
relief: (a) actual damages; (b) restitution of all funds improperly debited from Plaintiff's
and the Class Member's banks; (c) statutory damages; (d) treble damages pursuant to
15 U.S.C. 1693f(e); (e) incidental and consequential damages (e.g., loss of interest,
overdraft fees, and otherwise losing the use of their capital); and (f) an injunction
barring such unauthorized charges in the future.

75.     To date, Nationstar has not compensated Plaintiff or others similarly
situated for their loss of interest, overdraft fees, or other damages suffered as a result
of the unauthorized ACH debits.

## <u>SECOND CAUSE OF ACTION</u>
**Fair Debt Collection Practices Act**
**(On behalf of the FDCPA Subclass)**

76.     The foregoing allegations are hereby incorporated by reference as if fully restated herein.

77.     Nationstar often acts as a "debt collector, as defined by the FDPA, 15 U.S.C. § 1692a(6).

78.     Nationstar acted as a "debt collector" in servicing Plaintiff's mortgage and the mortgages of all others similarly situated because their loans were in default at the time Nationstar obtained the servicing rights.

79.     Plaintiff and all members of the FDCPA Subclass are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

80.     At all material times, Plaintiff's debt and the debts of the FDCPA Subclass were "debt" as defined by the FDCPA 15 U.S.C. § 1692a(5).

81.     Nationstar has collected debt in violation of 15 U.S.C. § 1692e by taking action it could not legally take. Each mortgage transaction is subject to a promissory note which prohibits Nationstar's actions. Similarly, each borrower who authorized ACH transactions from their bank account only authorized one debit transaction per month to cover the required periodic monthly payment.

82.     FDCPA section 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable mean to collect or attempt to collect debt."

83.     Nationstar has attempted to collect debt in violation of 15 U.S.C. § 1692f by using unfair and unconscionable means, including collecting amounts not expressly authorized by the borrower, the borrower's mortgage or deed of trust, the borrower's loan note, or permitted by law.

**THIRD CAUSE OF ACTION**
**Common Law Conversion**
**(On behalf of the Michigan Class)**

84.     The foregoing allegations are hereby incorporated by reference as if fully restated herein.

85.     Nationstar converted the personal property of Plaintiff and the Michigan Class by initiating unauthorized ACH debits from bank accounts owned by Plaintiff and each member of the Michigan Class.

86.     Nationstar engaged in the unauthorized assumption and exercise of the right of dominion over funds in the bank accounts of Plaintiff and each member of the Michigan Class to the exclusion of the respective account owners' rights.

87.     Nationstar's unauthorized debits were wrongful acts that deprived the respective account owners of their rightful property.

88.     Thus, Plaintiff and the Michigan Class were denied access to funds in their bank accounts and their right to dominion over their personal property was wrongfully violated by Nationstar (or its agent).

89.     Nationstar's unauthorized ACH debits from Plaintiff's account and the accounts of others similarly situated constituted distinct acts of dominion wrongfully

exerted over the respective account holders' personal property in denial of or inconsistent with the account holders' rights therein.

90. Nationstar's unauthorized ACH debits were intentional acts that dispossessed Plaintiff and others similarly situated of their personal property.

91. Nationstar's conversion of personal property from Plaintiff and each member of the Michigan Class was accompanied by outrageous and aggravated conduct (i.e., it was done to tens of thousands of consumers, it was done multiple times to some Michigan residents, if affected financially vulnerable persons, and because Nationstar (or its agents) financially benefitted from float interest that accrued on the converted funds).

92. Nationstar's conversion of personal property from Plaintiff and the Michigan Class was fraudulent, willful or wanton conduct that demonstrated indifference to the rights and safety of others; and Nationstar knew or should have known its conduct was reasonably likely to result in harm to Plaintiff and the Michigan Class.

93. Plaintiff and others similarly situated are entitled to recover compensatory and punitive damages as a result of Nationstar's conversion of their capital.

## FOURTH CAUSE OF ACTION
### Statutory Conversion, MCL § 600.2919a, *et seq.*
### (On behalf of the Michigan Class)

94. The foregoing allegations, specifically including but not limited to those set forth in support of the Third Cause of Action, are hereby incorporated by reference as if fully restated herein.

95. Nationstar's unauthorized ACH debits from Plaintiff's account and the accounts of others similarly situated constituted distinct acts of intentional dominion wrongfully exerted over the respective account holders' personal property in denial of or inconsistent with the account holders' rights therein.

96. By initiating unauthorized ACH debits, Nationstar stole or converted property belonging to Plaintiff and others similarly situated for Nationstar's own use.

97. For example, Nationstar (or its agent) benefitted from the use of the unlawful withdraws by, inter alia, accruing interest on the converted funds.

98. Moreover, Nationstar's unauthorized withdraws deprived Plaintiff and others similarly situated of the use of their funds and interest accruing on those funds.

99. As a result of the foregoing, Plaintiff and the Michigan Class are entitled to recover compensatory and treble damages; along with any other remedies recoverable at law.

## FIFTH CAUSE OF ACTION
### Michigan Regulation of Collection Practices Act, MCL § 445.252 *et seq.*
### (On behalf of the Michigan Class)

100.    The foregoing allegations are hereby incorporated by reference as if fully restated herein.

101.    Nationstar is a regulated person under MCL § 445.251(g).

102.    Plaintiff and the Class are "consumers" and "debtors" as those terms are defined in MCL § 445.251(d).

103.    MCL § 445.252(n) prohibits regulated persons from "using a harassing, oppressive, or abusive method to collect a debt…"

104.    Nationstar violated MCL § 445.252(n) because collecting debt by initiating unauthorized withdraws from the accounts of Plaintiff and others similarly situated was oppressive and abusive.

105.    Moreover, Nationstar violated MCL § 445.252(q) by failing to implement procedures designed to prevent the violations alleged herein by its employees or agents.

106.    Nationstar and/or its agents have collected money from Plaintiff and the Class using a method, act, or practice in violation of the RCPA.

107.    Plaintiff and the Class have suffered injury, loss or damages by the use of a method, act, or practice by Nationstar in violation of the RCPA.

108.     Nationstar's violations of the RCPA as alleged herein were and are willful.

109.    As a result of Nationstar's violations of the RCPA as alleged herein, Plaintiff and the Class are entitled to recover statutory damages – including civil fines – from Nationstar of $200 per Class member pursuant to MCL § 445.257 (1) & (2).

110.    Plaintiff and the Class are also entitled to recover their reasonable attorney's fees and costs pursuant to MCL § 445.257(2).

## SIXTH CAUSE OF ACTION
### Negligence
### (On behalf of the Michigan Class)

111.    The foregoing allegations are hereby reincorporated by reference as if fully stated herein.

112.    Nationstar has a duty to take reasonable precautions to prevent unauthorized automatic withdrawals.

113.    Nationstar was negligent in that it:

   a.  Failed to take proper steps to ensure that receivers can safely provide Nationstar with access to their checking accounts so that monthly mortgage payments can be made;

   b.  Failed to adequately supervise its employees, vendors, and/or agents (including ACI Worldwide) to ensure that the automatic withdrawal process was safe, reliable, and trustworthy;

   c.  Failed to establish reasonable procedures to immediately suspend ACH debit requests from borrowers once a problem was identified;

   d.  Failed to establish reasonable procedures to ensure that multiple entries

of the same dollar amount and same receiver would not be initiated on the same day;

e. Failed to ensure that appropriate risk management guidelines for payment processors were followed;

f. Failed to comply with relevant NACHA Operating Rules;

g. Failed to comply with Relevant Federal laws and regulations, including but not limited to 31 C.F.R. Part 210, the Uniform Commercial Code, and the Electronic Funds Transfer Act;

h. Otherwise failed to act as an ordinarily reasonable mortgage servicer would under the conditions then and there existing as will be shown after discovery and at trial; and

i. Otherwise failed to act as an ordinarily reasonable originator of ACH debit payment transactions would under the conditions then and there existing as will be shown after discovery and at trial.

114. Nationstar's negligence was the proximate cause of Plaintiff's injuries, and the injuries of others similarly situated.

115. Nationstar is aware of the reasonable foreseeability that a series of automatic withdrawals would have disastrous consequences for receivers, including Plaintiff; including stress, anxiety, and emotional injuries resulting from a loss of funds, even a temporary one.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff and all others similarly situated pray the Court for the following judgment as set forth below

1.      Certifying this action (including the Michigan Class, the FDCPA Subclass, and the EFTA Subclass) as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the class representative, and appointing the undersigned as Class Counsel;

2.      Adjudging that Nationstar is liable under the causes of action asserted above, and awarding Plaintiff and the members of the Michigan Class, FDCPA Subclass, and EFTA Subclass (collectively, "Class Members") actual and statutory damages;

3.      Awarding Plaintiffs and all Class Members their reasonable attorney's fees and costs incurred pursuant to the EFTA, FDCPA, RCPA or as otherwise allowed at law;

4.      For statutory damages pursuant to the FDCPA, EFTA, RCPA, or as otherwise allowed at law;

5.      For treble or punitive damages to the extent allowed by law;

6.      That the costs of this action be taxed to Nationstar;

7.      For trial by jury on all issues so triable; and

8.      For such other and further relief as this Court deems just and proper.

Respectfully submitted, this 21st day of June, 2021

*s/ Scott C. Harris*
Scott C. Harris
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
900 W. Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000
sharris@milberg.com

Edward H. Maginnis
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
(919) 526-0450
emaginnis@maginnishoward.com